UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JUAN FRANCISCO BATTEN HERRERA,

                Petitioner,

      v.

TODD BLANCHE, *et al.*,

                Respondents.

------------------------------------------------------------x

                **<u>MEMORANDUM AND ORDER</u>**
                26-CV-03321 (OEM)

ORELIA E. MERCHANT, United States District Judge:

On June 3, 2026, Petitioner Juan Francisco Baten Herrera ("Petitioner") filed a petition for a writ of habeas corpus against Respondents Kenneth Genalo, in his official capacity as the Field Office Director of New York Immigration and Customs Enforcement ("ICE"); Todd Lyons, in his official capacity as Director of ICE; Markwayne Mullin, in his official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"); Todd Blanche, in his official capacity as acting Attorney General of the United States; and Raul Maldonado, in his official capacity as Warden of the Brooklyn Metropolitan Detention Center ("MDC Brooklyn"). *See generally* Petition for Writ of Habeas Corpus (28 U.S.C. § 2241) and Emergency Order to Show Cause with Temporary Restraining Order, Dkt. 1 ("Petition" or "Pet."). Petitioner seeks his immediate release and challenges the lawfulness of his ongoing detention by ICE under the Immigration and Nationality Act ("INA"), the Fourth Amendment of the U.S. Constitution ("Fourth Amendment), and the Fifth Amendment of the U.S. Constitution ("Fifth Amendment"). *See id.* at 9.

## BACKGROUND

Petitioner is a citizen of Guatemala. *Id.* at 3. "He has lived in the United States since July 2010" continuously. *Id.* at 3-4. Petitioner "has a viable pending Application for Cancellation of Removal, Form EOIR-42B pursuant to INA § 240A(b)." *Id.* at 6. He is the "primary financial

provider" for his wife and two children as well as his two minor nephews for whom he serves as a court-appointed guardian. *Id.* at 6-7.

> On April 1, 2024, Petitioner was arrested by the Woodbury Town Police Department in Woodbury, New York, and charged with violations of (1) N.Y. Veh. & Traf. Law ("NY VTL") § 1192(3) (operating a motor vehicle while under the influence of alcohol or drugs), (2) NY VTL § 11192(2) (operating a motor vehicle with .08 of 1% or more by weight of alcohol in a person's blood), (3) NY VTL § 600.01A (operator leaves scene of property damage accident), [(4)] NY VTL 375.35(c) (operating a motor vehicle with unsafe tire) and [(5)] NY VTL § 1227.1 (drinking alcohol or consumption of cannabis in a motor vehicle on [a] public highway).

Declaration of Alexander Thompson ¶ 5, Dkt. 11-1 ("Thompson Declaration" or "Thompson Decl."); *see* Pet. at 4. On August 27, 2025, Petitioner was placed on interim probation supervision with Orange County Probation." Thompson Decl. ¶ 5 n.1. "[O]n April 9, 2026, the Orange County District Attorney's Office agreed to reduce the charge to a non-criminal traffic infraction before the end of the one-year conditional discharge period." Pet. at 4; *see id.*, Dkt. 1-11. However, to date, "Petitioner's criminal charges remain pending with the Woodbury Town Court." Thompson Decl. ¶ 5 n.1.

"On January 20, 2026, the Orange County Probation Office notified ICE regarding Petitioner" and thereafter, "ICE determined Petitioner was unlawfully present in the United States" and "issued a Form I-200, Warrant for Arrest of Alien [("Form I-200")] for Petitioner." *Id.* ¶ 6; *id.*, Exhibit B, Dkt. 11-3 ("Form I-200 Warrant"). "On or about [February 4, 2026], [Petitioner] appeared for a misdemeanor probation visit" at which he was encountered by ICE officers. Pet. at 4; Thompson Decl. ¶ 7. He was "arrested and transported to the ICE Newburgh Hold Room, New York for post-arrest processing." Thompson Decl. ¶ 7. On February 4, 2026, "during post-arrest processing ICE determined that Petitioner was mandatorily detained pursuant to INA § 235(b)(2)(A)[8 USC § 1225(b)(2)(A)]." *Id.* ¶ 8 (alteration in original). He was then transferred

to Orange County Jain in Goshen, New York. *Id.* ¶ 9. On February 14, 2026, Petitioner was transferred to MDC Brooklyn. *Id.* ¶ 10.

"Also on February 4, 2026, Petitioner was served with a Form I-862, Notice to Appear ("NTA"), which directed Petitioner to appear before an immigration judge." *Id.* ¶ 9; *id.*, Exhibit D, Dkt. 11-5 ("NTA Form"). The NTA also charged Petitioner "as removable pursuant to INA § 212(A)(6)(A)(i) [8 U.S.C. § 1182(a)(6)(A)(i)] . . . and INA § 212(a)(7)(A)(i)(I) [8 U.S.C. § 1182(a)(7)(A)(i)(I)] . . . who, at the time of application for admission is not in possession of a valid entry documents, as required under the regulations issued by the Attorney General." *Id.* ¶ 9 (alterations in original). Petitioner was directed to appear at the Varick Immigration Court in New York, and he was placed in removal proceedings. *Id.* On May 18, 2026, Petitioner filed a motion for custody redetermination before the immigration judge. *Id.* ¶ 14. On May 27, 2026, the immigration judge "denied Petitioner's request for a change in custody status, finding that Petitioner failed to demonstrate he is not a danger to the community." *Id.* ¶ 16; *id.*, Exhibit G, Dkt. 11-8. To date, "Petitioner has not yet filed an appeal." *Id.* ¶ 16.

On May 12, 2026, after the Second Circuit's decision in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), ICE "prepared a Form I-286, Notice of Custody Determination and worksheet pursuant to *Velesaca v. Decker*, No. 20-cv-1803 (SDNY)." *Id.* ¶ 13; *id.*, Exhibit E, Dkt. 11-6 ("Custody Determination"); *id.*, Exhibit F, Dkt. 11-7 ("*Velesaca* Worksheet"). "On May 29, 2026, ICE conducted an individualized custody determination with respect to Petitioner under 8 U.S.C. § 1226(a), which included an interview of Petitioner and considered factors noted on the *Velesaca* worksheet." *Id.* ¶ 17. ICE then determined that "Petitioner failed to establish that he did not pose a danger [to] persons or property" and served Petitioner the Form I-286 and *Velesaca* worksheet. *Id.*

3

On June 9, 2026, the Court held a hearing on Petitioner's Order to Show Cause.  *See* Minute Entry, dated June 9, 2026 ("Hearing").

## DISCUSSION

Petitioner asserts that ICE violated his due process rights by failing to engage in a contemporaneous individualized custody determination at the time of his arrest.  *See* Pet. at 40-43. In opposition, Respondents contend that Petitioner is currently detained pursuant to 8 U.S.C. § 1226(a) ("Section 1226(a)") and that ICE properly conducted an individualized custody determination, which now bars this Court from reviewing that determination.  *See* Letter from Respondents to the Court (June 8, 2026) at 3-4, Dkt. 11 ("Return").  Respondents further contend that the Court lacks jurisdiction because Petitioner must first exhaust his administrative remedies before seeking district court intervention.  *Id.* at 4-5.  The Court addresses each argument in turn.

### A.  Jurisdiction

As an initial matter, the Court is not jurisdictionally barred from analyzing Petitioner's due process issue.  While Respondents correctly argue that "Section 1226(e) provides that '[ICE]'s discretionary judgment regarding the application of this section shall not be subject to review," Reply at 4 (alteration in original) (quoting 8 U.S.C. § 1226(e)), Section 1226(e) does not bar review of the procedures used and whether Petitioner's detention comports with due process, *see Quille v. Blanche*, 26-CV-2818 (HG), 2026 WL 1453889, at *3 (E.D.N.Y. May 22, 2026); *Cajamarca-Janza v. Soto*, 26-CV-3066 (HG), 2026 WL 1506777, at *3 (E.D.N.Y. May 29, 2026); *Pastrana-Beltran v. Mullin*, 26-CV-2657 (RER), 2026 WL 1398609, at *3 (E.D.N.Y. May 19, 2026) ("Rather than impermissibly pry behind the discretionary curtain, the Court assesses whether and how correct procedures were applied at all (they were either not applied or applied erroneously) and ultimately, whether [Petitioner]'s detention comports with due process (it does not)." (citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001))).

4

### B. Administrative Exhaustion

Administrative exhaustion does not prohibit this Court's review.   Exhaustion is a "prudential matter," and courts in this Circuit have excused exhaustion when "available remedies provide no genuine opportunity for adequate relief." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (quoting *Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995)).  As this Court has held previously, post-deprivation review in the form of a bond hearing and appellate review of that bond determination is inadequate to remedy a detention that is unlawful from its inception.  *See J.U. v. Maldonado*, 805 F. Supp. 3d 482, 490 (E.D.N.Y. 2025); *Artiga v. Genalo*, 25-CV-5208 (OEM), 2025 WL 2829434, at *4 (E.D.N.Y. Oct. 5, 2025); *Acuapan v. Bondi*, 26-CV-384, 2026 WL 507889, at *3 (E.D.N.Y. Feb. 24, 2026); *see also Chipantiza-Sisalema v. Francis*, 25 Civ. 5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y July 13, 2025) (stating that a bond hearing "is no substitute for the requirement that ICE engage in a 'deliberative process prior to, or contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause" (quoting *Lopez v. Sessions*, 18 Civ. 4189 (RWS), 2018 WL 2932726, at *15 (S.D.N.Y. June 12, 2018))).

### C. Due Process

Turning to the issue of whether whether ICE's detention of Petitioner violates his due process rights, Respondents concede that, after the Second Circuit issued its ruling in *da Cunha*, Petitioner was subject to detention pursuant to Section 1226(a).  Return at 3.  Section 1226(a) provides, in pertinent part, that:

> an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and

5

(2) may release the alien on—

> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

> (B) conditional parole

8 U.S.C. § 1226(a).  The statute affords arrested aliens "an initial custody determination *before* exercising discretionary detention that entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk."  *Pastrana-Beltran*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) (citing *da Cunha*, 458 F. Supp. 3d at 72); *see also* 8 C.F.R. §§ 1003.19(a), (f), 1236.1(d)(1); *Lopez Benitez v. Francis*, 795 F Supp, 3d 475, 492-93 (S.D.N.Y. 2025) ("[B]efore the Government may exercise such discretion to detain a person, '§ 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination.'" (quoting *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, 20-2153, 2020 WL 7973940, (2d Cir. Oct. 13, 2020))).

Whether Respondent's actions pursuant to Section 1226(a) comported with the principles of due process is governed by the three-part balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (applying the three-factor balancing test outlined in *Mathews* to determine the adequacy of process in the context of civil immigration confinement).  The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.

6

With respect to the first prong of the *Mathews* test, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).

With respect to the second prong of the *Mathews* test, the record demonstrates that Respondents' procedure in arresting and detaining Petitioner presents a high risk of erroneous deprivation. "The purpose of requiring an exercise of discretion [under Section 1226(a)] prior to the decision to detain a noncitizen who is not subject to mandatory detention is to prevent an erroneous deprivation of liberty." *Lopez Benitez*, 795 F. Supp. 3d at 495; *see also id.* at 497 (explaining that ICE must "engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause"). Here, the record demonstrates that no individualized determination was made prior to or contemporaneously with the decision to detain Petitioner on February 4, 2026. The Form I-200 Warrant does not indicate that ICE found Petitioner to be either a flight risk or danger to the community. *See* Form I-200 Warrant.

Respondents' attempt to "cure" the procedural failure of the initial arrest and detention months later is unavailing. Respondents contend that ICE is now lawfully detaining Petitioner under Section 1226(a), because it conducted an individualized custody determination on May 12, 2026, that considered Petitioner's danger to the community and accordingly found that he had not established that he did not pose a danger to the community.[1] Reply at 3; *see* Custody Determination; *Velesaca* Worksheet at 1. "[A]n executive agency, like ICE, is bound by the bases it used to justify its decision—here the arrest and detention—in the first instance, not reasons it comes up with afterwards." *Inestroza Carbajal v. Frazier*, 26-CV-2778-SJB, 2026 WL 1309265,

---

[1] While Respondents addressed Petitioner's danger to the community on the *Velesaca* Worksheet, they did not fill out the section assessing whether he is or is not a flight risk. *See Velesaca* Worksheet at 2.

at *1 (E.D.N.Y. May 12, 2026) (collecting cases); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24 (2020) (holding that "[a]n agency must defend its actions based on the reasons it gave when it acted," and may not rely on "impermissible *post hoc* rationalizations."). Allowing the contrary "would permit Respondents to flout the demands of due process and the regulations governing initial custody determinations." *S.G.V. v. Genalo*, 26-CV-2893 (PKC), 2026 WL 1492770, at *2 (E.D.N.Y. May 28, 2026), and this Court is not alone in rejecting attempts to recharacterize an initially unlawful detention as a lawful one, *see id.* ("Respondent's proffered custody redetermination cannot cure the violation of Petitioner's due process rights at the time of arrest. The appropriate remedy, in such situations, is release."); *Inestroza Carbajal*, 2026 WL 1309265, at *1-4 (rejecting the respondents' argument that "what began and continued as an illegal detention, became legal because they have found a different source of legal authority"); *Pastrana-Beltran*, 2026 WL 1398609, at *2 ("Respondent cannot create a post hoc rationalization for [petitioner's] detention. . . . To argue that [petitioner] was detained under one statutory provision but may be continuously detained under another since the Circuit ruled the first one inapplicable, is exactly the kind of post hoc rationalization that the Supreme Court deemed impermissible." (citing *Regents of the Univ. of Cal.*, 591 U.S. at 22 (2020))).

As to the third and final *Mathews* prong, "the Attorney General's discretion to detain individuals under 8 § U.S.C. 1226(a) [sic] is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; and then quoting *Zadvydas*, 533 U.S. at 690).

Here, when Petitioner was arrested and detained on February 4, 2026, there was no initial determination made as he was mandatorily detained under Section 1225(b)(2)(A). *See* Thompson

8

Decl. ¶ 8.   It was not until months later, on May 12, 2026, when he received the Custody Determination.   *See* Custody Determination; Thompson Decl. ¶ 13.   "Allowing for a custody determination . . . weeks later does not advance any legitimate governmental purpose, since the only reason for the delay was the Government's decision to use a process deemed illegal by the Court of Appeals."   *Inestroza Carbajal*, 2026 WL 1309265, at *4.   Furthermore, the facts show that Petitioner is not a flight risk.   He has a wife and two children and two nephews in New York that are financially dependent upon him. *See* Pet. at 3, 7.   He is involved with his church and community and has been employed at the same job since 2013. *See id.* at 3-4.   In addition, he has pending immigration proceedings "which will result in permanent residence when approved," further demonstrating his incentive to appear at future proceedings.   *Id.* at 6, 22.   The facts also demonstrate that Petitioner is not a danger to the community.   His arrest resulted in charges for misdemeanors and infractions, *see* Thompson Decl., Exhibit A, Dkt. 11-2, and there is an agreement with the district attorney that they be reduced to non-criminal traffic infractions after Petitioner completes a one-year probationary period, Pet. at 4.   This is insufficient to demonstrate a danger to the community.   *See Ipina Hernandez v. Genalo*, 16-CV-137 (VSB), 2026 WL 507739, at *6 (S.D.N.Y. Feb. 22, 2026) (determining that the charges, which were misdemeanors—a violation and an infraction related to a vehicular stop—did not suggest that the petitioner presented a danger to the community); *Habib v. Maldonado*, 26-CV-2038 (OEM), 2026 WL 1088618, at *4 (E.D.N.Y. Apr. 22, 2026) (the petitioner's nonviolent traffic violation did not suggest that the petitioner presented a danger to the community).   Ultimately, Respondents have failed to show a significant interest in Petitioner's continued detention.

Taken together, Petitioner's ongoing detention violates his due process rights.   *See Valdez*, 803 F. Supp. 3d at 219; *Lopez*, 2018 WL 2932726, at *15.   Given the deprivation of Petitioner's

9

liberty, the absence of any deliberative process prior to or contemporaneous with the deprivation, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only form of relief and the most appropriate remedy. *Valdez*, 803 F. Supp. 3d at 219; *Lopez*, 2018 WL 2932726, at \*15. [2]

## CONCLUSION

For the foregoing reasons, Petitioner's request for immediate release from custody is granted. Respondents may not impose additional conditions of release such as electronic or ankle monitoring without an individualized determination. *See Khabazha v. U.S. Immigr. and Customs Enf't*, 25-cv-05279 (JMF), 2025 WL 3281514, at \*3 (S.D.N.Y. Nov. 25, 2025) (first citing *Vega v. Schneiderman*, 861 F.3d 72, 74 (2d Cir. 2017); and then citing *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345, 351 (1973)) (concluding that electronic monitoring and ankle monitoring amount to custody for habeas purposes); *see also Lopez Perez v. Genalo*, 26-CV-715 (JPO), 2026 WL 787844, at \*1-2 (S.D.N.Y. Mar. 20, 2026); *Campbell v. Almodovar*, 25-cv-09509 (JLR), 2025 WL 3826099, at \*1 (S.D.N.Y. Dec. 15, 2025). By June 10, 2026, Respondents shall certify compliance with this order by filing on the docket and noting specifically that Petitioner has been released.

---

[2] Because the Court determines that Petitioner's detention violates his due process rights, it need not address his remaining claims. *See, e.g.*, *Valdez*, 803 F. Supp. 3d at 217 n.4 (declining to address remaining claims after determining that the petitioner's detention violated due process).

The Clerk of Court is respectfully directed to enter judgment in accordance with this order and close this case.

SO ORDERED.

_____/s/_____
ORELIA E. MERCHANT
United States District Judge

June 10, 2026
Brooklyn, New York

11